```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/12/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                           :
VINCENT P. McCRUDDEN,                                      :    13cv8837
                                                           :
                    Plaintiff,                             :    MEMORANDUM & ORDER
                                                           :
        -against-                                          :
                                                           :
E-TRADE FINANCIAL CORP, et al.,                            :
                                                           :
                    Defendants.                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff pro se Vincent P. McCrudden brings this action alleging violations of the Civil Rights Act of 1964, the Workforce Investment Act of 1998, and the Sherman Act. Defendants[1] move to dismiss the second amended complaint for failure to state a claim. For the following reasons, the motion is granted.

## BACKGROUND

        The motion papers allege government conspiracies, death threats, and an ostensibly innocent man imprisoned after being framed by the NSA.[2] But the facts alleged in the complaint, and relevant for the purpose of this motion to dismiss, are far more mundane. In 2013, McCrudden opened or attempted to open securities or futures trading accounts with each Defendant. Those Defendants who did not deny his application in the first place closed his

---

[1] The many defendants in this action are AMP Global Clearing, LLC; Apex Clearing Corp.; Avail Trading Corp.; E*TRADE Financial Corp.; GAIN Capital Group, LLC; Insignia Futures & Options, Inc.; Institutional Liquidity, LLC; INTL FCStone Inc.; Ironbeam, Inc.; Lightspeed Trading, LLC; MBF Clearing Corp.; optionsXpress, Inc.; TD Ameritrade Holding Corp.; tradeMONSTER Group, Inc; and TradeStation Securities, Inc.
[2] In short, McCrudden pleaded guilty in 2012 to threatening officials at various financial regulatory organizations and served 28 months in federal prison. McCrudden maintains his innocence, arguing the threats were authored by the NSA. None of this is relevant to Defendants' motion.

accounts soon after he opened them. McCrudden alleges that refusing to establish trading accounts in his name was unlawful discrimination and violated antitrust laws.

McCrudden opened a TD Ameritrade account in April 2013. In July 2013, he received a letter stating TD Ameritrade was closing his account. McCrudden was unable to learn why TD Ameritrade closed his account.

McCrudden opened E*Trade accounts in May 2013. In June, E*Trade sent him a letter informing it was closing his accounts. McCrudden alleges a telephone customer service representative refused to give him any reason for the termination and did not release the funds from his accounts. A month later, a corporate manager called McCrudden to apologize and stated the customer service representative had not followed E*Trade's protocol.

McCrudden opened an optionsXpress futures account in July 2013. In September, optionsXpress sent McCrudden an email stating it reserved the right to deny or retract business. McCrudden called the person who sent him the letter, but she would not give the reason she sent it.

Also in July 2013 McCrudden applied for a Tradestation account. A sales supervisor emailed him, stating Tradestation "made a business decision not to move forward" with his account. Second Am. Compl. ¶ 92. McCrudden attempted to follow up on Tradestation's reasons and was told in an email that "it is in keeping with firm policy that we do not reveal the reason we choose not to pursue or continue a business relationship with a client." Second Am. Compl. ¶ 93.

McCrudden opened an account with Lightspeed in September 2013. Three days later, Lightspeed told McCrudden it was an introducing broker for RJ O'Brien and asked him to open an account with RJ O'Brien, which he did. The next day, Lightspeed told McCrudden

"several issues have come up from the compliance department" and asked him not to make trades, as his accounts had been restricted. Second Am. Compl. ¶ 80. Lightspeed later closed his accounts without providing a reason.

A broker at ATC Brokers solicited McCrudden to open a futures trading account in September 2013. McCrudden applied for an account, but ATC Brokers denied his application. McCrudden alleges ATC Brokers is an introducing broker for GAIN Capital. McCrudden requested financial information from ATC Brokers, which it did not provide.

Also in September 2013, McCrudden applied for a futures trading account with MBF. He alleges MBF is an introducing broker for FCStone. About two weeks after McCrudden's application, MBF responded by email and stated that after performing "due diligence," it would not open an account for him. McCrudden requested further information, but MBF's vice president, acting on behalf of FCStone, told him that FCStone does not disclose its reasons for rejecting account applications.

McCrudden opened a futures account with Global Futures in October 2013, which McCrudden states is an introducing broker for AMP Global. AMP Global closed the account in December. McCrudden was told only that his account "does not meet our current risk parameters." Second Am. Compl. ¶ 83.

McCrudden also applied for an Insignia account in October 2013. McCrudden alleges Insignia is an introducing broker for Ironbeam. The day after McCrudden applied, Insignia sent him an email stating it could not give him an account because of "past or pending regulatory actions" by the National Futures Association and the Commodity Futures Trading Commission. Second Am. Compl. ¶ 85.

Finally, McCrudden opened an account with Velocity Futures on October 15, 2013. He alleges Velocity Futures is an introducing broker to Institutional Liquidity. On October 18, Velocity Futures gave him a different account number and delayed his ability to begin trading. When he inquired as to his account's status in December, he was told his "account was denied by compliance," but he was not told why. Second Am. Compl. ¶ 90. The next day, Institutional Liquidity's CEO called McCrudden and said they could terminate a business relationship for any reason.

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine plausibility, courts follow a "two-pronged approach." Iqbal, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal punctuation omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). On a motion to dismiss, courts may consider "facts stated on the face of the complaint, in the documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

A pro se complaint must be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1980). Courts must liberally construe a pro se pleading "to raise the strongest arguments it suggests. Nonetheless, a pro se complaint must state a plausible claim for relief." Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014) (quoting Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013)).

II.   Title VI of the Civil Rights Act of 1964

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a Title VI claim, a plaintiff must show (1) the defendants receive federal financial assistance, (2) their actions were discriminatory based on race, color, or national origin, (3) the discrimination was intentional, and (4) the discrimination was a "substantial or motivating factor" for defendants' actions. Tolbert v. Queens College, 242 F.3d 58, 69 (2d Cir. 2001). A plaintiff alleging discrimination "must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994).

McCrudden does not allege his race, color, or national origin. He does not allege which of these was the basis of the Defendants' "discrimination." He does not allege any reason to believe he was discriminated against on the basis of race, color, or national origin, and in fact in his opposition brief states he has "no idea the exact reason he was discriminated against." ECF No. 90 at 10. This does not give "rise to a plausible inference of [] discriminatory intent." Yusuf, 35 F.3d at 713.

Nor does McCrudden allege that Defendants operate programs or activities receiving federal assistance. The Department of Health & Human Services's regulations interpreting Title VI state that

> Federal financial assistance includes (1) grants and loans of Federal funds, (2) the grant or donation of Federal property and interests in property, (3) the detail of Federal personnel, (4) the sale and lease of, and the permission to use (on other than a casual or transient basis), Federal property or any interest in such property without consideration or at a nominal consideration, or at a consideration which is reduced for the purpose of assisting the recipient, or in recognition of the public interest to be served by such sale or lease to the recipient, and (5) any Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance.

45 C.F.R. § 80.13. A Title VI plaintiff must allege he is the intended beneficiary of a specific program or activity which receives federal financial assistance. Kelly v. Rice, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005). McCrudden alleges only that "defendants benefit directly or indirectly by Government, low cost funding." This is insufficient to establish that McCrudden is the intended beneficiary of federally-assisted programs or activities run by Defendants.

Because McCrudden has not alleged any of the elements of a Title VI discrimination claim, that claim is dismissed.

III. <u>Workforce Investment Act of 1998</u>

The non-discrimination provision of the Workforce Investment Act of 1998 provides that

> [n]o individual shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in the administration of or in connection with, any [program or activity funded under the Workforce Investment Act] because of race, color, religion, sex (except as otherwise permitted under title IX of the Education Amendments of 1972), national origin, age, disability, or political affiliation or belief.

29 U.S.C. § 2938(a)(2). But there is no private right of action under this section. Instead, the Secretary of Labor and Attorney General are charged with enforcement. See 29 U.S.C. § 2938(b)-(c); Machie v. Nguyen, 824 F. Supp. 2d 146, 151 (D.D.C. 2011); McGowan v. New Jersey, Civil Action No. 08-5841, 2009 WL 1687663, at *8 (D.N.J. June 16, 2009); Borrero-Rodriguez v. Montalvo-Vazquez, 275 F. Supp. 2d 127, 132 (D.P.R. 2003).

Moreover, McCrudden does not allege that any Defendant received funding under the Workforce Investment Act or that he was excluded from or denied employment in connection with any program or activity funded under the statute. This too is fatal to his claim. Machie, 824 F. Supp. 2d at 151.

IV.  Sherman Act

McCrudden alleges violations of sections 1 and 2 of the Sherman Act. To have "antitrust standing," a plaintiff must have suffered "an injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc., 429 U.S. 477, 489 (1977). "The injury must reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." Brunswick Corp., 429 U.S. at 477.

McCrudden's alleged injury is the Defendants' refusal to conduct business with him. But refusing an individual customer's business is not anticompetitive. See Ruotolo v. Fannie Mae, 933 F. Supp. 2d 512, 520 (S.D.N.Y. 2013) ("[T]he antitrust laws were enacted for the protection of competition, not the protection of a single market participant like Plaintiff." (internal quotation marks and emphasis removed)). Because McCrudden has not suffered an

injury the antitrust laws were intended to prevent, he does not have antitrust standing. His Sherman Act claims must therefore be dismissed.

V.  Leave to Replead

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999). In particular, a pro se complaint should not be dismissed without at least one opportunity to replead "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).

McCrudden filed an amended complaint on February 6, 2014 (ECF No. 60). On February 27, 2014, Defendants sent this Court and McCrudden a pre-motion letter, as required by this Court's individual rules of practice, outlining their anticipated arguments for a motion to dismiss. (ECF No. 69). This Court held a pre-motion conference on March 28, 2014, where Defendants elaborated on their arguments for dismissing the amended complaint. This Court granted McCrudden leave to file a second amended complaint to address those arguments, but cautioned that he would not be given leave to replead if the motion to dismiss the second amended complaint was granted. (ECF No. 83). And even a liberal reading of McCrudden's complaint gives no indication that he has a valid claim, making leave to replead futile. His claims are therefore dismissed with prejudice.

## CONCLUSION

Defendants' motion to dismiss the second amended complaint is granted. McCrudden's claims are dismissed with prejudice. The Clerk of Court is directed to terminate all pending motions and mark this case closed.

Dated: August 12, 2014
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

Vincent P. McCrudden
*Plaintiff Pro Se*

*All Counsel of Record*